

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB 14  PM 4: 40

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT F. ROUSSELL** | **CIVIL ACTION** |
| **VERSUS** | **NO.  04-1321** |
| **BURL CAIN, WARDEN** | **SECTION "F"(4)** |

## REPORT AND RECOMMENDATION

      This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  The matter was remanded to the Magistrate Judge for consideration of the merits of the claims raised.[1]  Upon review of the entire record, the Court determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[2]

---

[1]Rec. Doc. No. 10.

[2]Under Title 28 U.S.C. § 2254(e)(2), the District Court may hold an Evidentiary Hearing only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by an exercise of due diligence, and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

Fee
Process
X Dktd
CtRmDep
Doc. No

## I.    Factual and Procedural Background

The petitioner, Robert F. Roussell ("Roussell")[3] and a co-defendant, Rodrigo V. Conner, were charged on March 24, 1999, by Bill of Information in Jefferson Parish with simple burglary of an inhabited dwelling.[4]  The record reflects that, the victim, Paquita Harden, lived in an apartment which shared a common wall with Tammy Gordon.[5]

Gordon testified at Roussell's trial that, on March 8, 1999, after Harden left, she heard Harden's brother arrive and leave the apartment before 11:30 a.m.  However, at 12:50 p.m., Gordon heard a loud noise that sounded like someone kicked in the door of Harden's apartment.  She also heard sounds as if someone was tearing down the walls and clanging clothes' hangers.  She telephoned Harden's apartment but no one answered.  Gordon then called the police, who arrived within two or three minutes.  The police arrived as Roussell, Conner, and two other black males, were exiting the apartment.  Roussell, Conner, and a juvenile were arrested near the scene.  The fourth participant was not apprehended.

Harden later returned home to find her apartment ransacked and her sofa destroyed.  She testified at trial that most of her furniture, including her stereo and television, was damaged or thrown around, but nothing was missing from the apartment.  She testified at trial that her brother had a key to her apartment and had been there that day.  Harden also surmised that her brother knew Conner, the co-defendant, because he told police that Conner had paged him that day.

_____

[3]Roussell is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. Rec. Doc. No. 1, Petition.

[4]St. Rec. Vol. 1 of 7, Bill of Information, 3/24/99.

[5]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal. *State v. Roussell[l]*, 767 So.2d 811 (La. App. 5th Cir. 2000); St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 00-KA-192, 7/25/00.

She further testified that the only personal item her brother had at her apartment was a gun, which she kept in a cabinet.  After the incident, the police found the gun in a box by the front door.

Roussell and Conner were tried before a jury on May 24 and 25, 1999, and both were found guilty as charged.[6]  On June 2, 1999, the Trial Court sentenced Conner to four years imprisonment, suspended after one year, to be followed by four years of active probation.[7]

That same day, the State filed a Multiple Offender Bill against Roussell, to which he entered a plea of not guilty.[8]  The State filed an Amended Multiple Offender Bill on June 25, 1999.[9]  On June 30, 1999, the Trial Court sentenced Roussell on the underlying conviction to 12 years imprisonment with the first year to be without benefit of parole, probation or suspension of sentence.[10]  Roussell also entered a plea of not guilty to the Amended Multiple Offender Bill.

At a hearing held on July 28, 1999, the Trial Court found Roussell to be a multiple offender and sentenced him to life imprisonment.[11]  Roussell's counsel filed a Motion to Reconsider Sentence which was denied without reasons on August 10, 1999.[12]

---

[6] St. Rec. Vol. 1 of 7, Trial Minutes (2 pages), 5/24/99; Trial Minutes (2 pages), 5/25/99; St. Rec. Vol. 4 of 7, Jury Verdict (Roussell), 5/25/99; Trial Transcript, 5/25/99; St. Rec. Vol. 5 of 7, Trial Transcript (continued), 5/25/99.

[7] St. Rec. Vol. 1 of 7, Sentencing Minutes (Conner), 6/2/99.

[8] St. Rec. Vol. 1 of 7, Multiple Bill Hearing, 6/2/99; Multiple Bill (2 pages), 6/2/99.

[9] St. Rec. Vol. 1 of 7, Multiple Bill (2 pages), 6/25/99.

[10] St. Rec. Vol. 1 of 7, Sentencing Minutes (Roussell), 6/30/99; St. Rec. Vol. 5 of 7, Sentencing Transcript, 6/30/99.

[11] St. Rec. Vol. 1 of 7, Multiple Bill Hearing Minutes, 7/28/99; St. Rec. Vol. 2 of 7, Multiple Bill Hearing Transcript, 7/28/99.

[12] St. Rec. Vol. 1 of 7, Motion to Reconsider Sentence, 8/2/99; Trial Court Order, 8/10/99.

On appeal, Roussell's counsel challenged the trial court's instruction to the jury on the offense of criminal damage to property as a "felony therein" which invited the jury to render a verdict without sufficient evidence.[13]   The Louisiana Fifth Circuit Court of Appeal affirmed Roussell's conviction and sentence on July 25, 2000, finding no merit to Roussell's claim.[14]   The Louisiana Supreme Court also denied Roussell's subsequent Writ Application to that Court without reasons on October 5, 2001.[15]

On August 19, 2002, Roussell submitted an Application for Post Conviction Relief to the Trial Court raising two grounds for relief:[16] (1) insufficient evidence to support the conviction; and (2) ineffective assistance of counsel.  The Trial Court denied the Application without prejudice on October 16, 2002, because Roussell failed to file the Application on the proper form as required by Louisiana law.[17]

On October 18, 2002, Roussell filed another Application for Post Conviction Relief again raising insufficiency of the evidence and ineffective assistance of counsel for failure to object to the authenticity and admissibility of evidence at trial, to hearsay testimony, and to documentary

---

[13]St. Rec. Vol. 5 of 7, Assignments of Error, 2000-KA-0192, 3/14/00; Appeal Brief, 2000-KA-0192, 3/14/00.

[14]*State v. Roussell[I]*, 767 So.2d 811 (La. App. 5th Cir. 2000); St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 00-KA-192, 7/25/00.  The appellate court also instructed the Trial Court to notify Roussell that the post-conviction filing period in La. Code Crim. P. art. 930.8 was amended to two years from the three years about which he was advised at sentencing. The Trial Court complied with the request by letter dated August 3, 2000.  St. Rec. Vol. 1 of 7, Letter to Roussell, 8/3/00.

[15]St. Rec. Vol. 6 of 7, La. S. Ct. Writ Application, 00-KO-2558, 9/1/00; St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2000-KO-2558, 9/1/00; *State v. Roussell*, 798 So.2d 960 (La. 2001); St. Rec. Vol. 1 of 7, La. S. Ct. Order, 2000-KO-2558, 10/5/01.

[16]St. Rec. Vol. 2 of 7, Application for Post Conviction Relief, 8/19/02.

[17]St. Rec. Vol. 2 of 7, Trial Court Order, 10/16/02.

evidence.[18] The Trial Court denied the Application on November 22, 2002, finding the insufficiency of the evidence claim to be procedurally barred because it was addressed by the appellate court on direct appeal, and finding that the ineffective assistance of counsel claim was meritless.[19]

The record reflects that Roussell was served with a copy of the November 22, 2002, ruling on December 2, 2002.[20]  Roussell filed a Writ Application in the Louisiana Fifth Circuit Court of Appeal on January 7, 2003 which the Court denied on January 10, 2003, finding no error in the Trial Court's ruling.[21]

On February 7, 2003, Roussell filed a Writ Application in the Louisiana Supreme Court alleging insufficiency of the evidence and ineffective assistance of counsel in the multiple bill hearing.[22]  The Court denied the Application without reasons on February 20, 2004.[23]

## II.   Federal Petition

On May 5, 2004, Roussell filed a Petition for Federal Habeas Corpus Relief in which he alleges that the conviction was based on insufficient evidence and ineffective assistance of counsel during the multiple bill hearing.[24]  The State responded to the petition alleging that Roussell's claims

---

[18]The record does not contain a copy of this Application.  However, the filing date and claims raised are indicated in the Trial Court's order.  St. Rec. Vol. 2 of 7, Trial Court Order (2 pages), 11/22/02.

[19]St. Rec. Vol. 2 of 7, Trial Court Order (2 pages), 11/22/02.

[20]St. Rec. Vol. 2 of 7, Receipt, 12/2/02.

[21]St. Rec. Vol. 2 of 7, 5th Cir. Writ Application, 03-KH-16, 1/7/03; St. Rec. Vol. 2 of 7, 5th Cir. Order, 03-KH-16, 1/10/03.

[22]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 03-KH-0420, 2/7/03; La. S. Ct. Letter, 2003-KH-420, 2/7/03.

[23]State ex rel. Roussell v. State, 866 So.2d 827 (La. 2004); St. Rec. Vol. 2 of 7, La. S. Ct. Order, 2003-KH-0420, 2/20/04.

[24]Rec. Doc. No. 1, Petition.

are without merit.[25]  Roussell then filed a traverse to the State's opposition in which he supplemented

his arguments in support of these claims.[26]

## III.     <u>Standards of Review on the Merits</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214, which comprehensively revised federal habeas corpus legislation, including

Title 28 U.S.C. § 2254, went into effect on April 24, 1996[27] and applies to habeas petitions filed after

that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S.

320 (1997)).  The AEDPA therefore applies to Roussell's petition, which is deemed filed under the

federal mailbox rule on April 12, 2004.[28]

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision

in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact,

questions of law and mixed questions of fact and law.  A state court's determinations of questions

of fact are presumed correct and the court must give deference to the state court findings unless they

were based on an unreasonable determination of the facts in light of the evidence presented in the

---

[25]Rec. Doc. No. 5.

[26]Rec. Doc. No. 7.

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Roussell's petition on May 5, 2004.  Nevertheless, Roussell signed his petition on April 12, 2004, which is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the mailbox rule to this pro se petition. *Cousin v. Lensing*, 310 F.3d 843, 846 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision

7

applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting

*Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine

whether the state court's reasoning is sound, rather "the only question for a federal habeas court is

whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230,

246 (5th Cir. 2002).   The burden is on the petitioner to show that the state court applied the

precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537

U.S. 19, 24-25 (2002).

## IV.   Sufficiency of the Evidence

Roussell alleges that the State failed to prove the specific intent element of the charge of

simple burglary of an inhabited dwelling.  He contends that the evidence showed that nothing was

removed from the apartment therefore the State failed to prove that a theft was committed, it failed

to exclude every reasonable hypothesis of his innocence, and it failed to establish that he was a

principal to the crime because of the lack of evidence of his specific intent.

The State argues that the evidence at trial was sufficient for a jury to find that Roussell was

a principal, because he  acted as the lookout, and that he had the specific intent to commit a theft

based on the condition of the apartment.

This claim was first addressed by the Louisiana Fifth Circuit as a tangent to Roussell's

challenge to the jury instructions on specific intent and burden of proof.[29]  The Louisiana Fifth

Circuit relied on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), to examine the

---

[29]*State v. Roussel[l]*, 767 So.2d 811 (La. App. 5th Cir. 2000); St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 00-KA-192, 7/25/00.

sufficiency of the evidence to establish whether Roussell was a principal in the simple burglary, focusing on the theory of specific intent to commit a theft in the apartment. The court resolved that a jury, after making credibility determinations, could have concluded that every reasonable hypothesis of innocence was excluded, that Roussell was a principal to the crime, and that there was sufficient evidence supporting the theory of intent to commit a theft.

The Louisiana Supreme Court did not offer any further reasoning for the denial of relief in connection with Roussell's subsequent writ application. Furthermore, when Roussell raised the issue in his application for post-conviction relief, the Trial Court considered the issue res judicata citing the appellate court's ruling on direct appeal.[30] The Louisiana Fifth Circuit and the Louisiana Supreme Court did not provide further reasons for the denial of relief on the subsequent post-conviction writ applications. Therefore, the last reasoned decision on the issue was that propounded by the Louisiana Fifth Circuit on direct appeal in which the claim was denied as meritless. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

### A.   The *Jackson* Standard

The appropriate Supreme Court law for determining the sufficiency of trial evidence was set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which was relied upon by the Louisiana Fifth Circuit. The *Jackson* standard requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S.

---

[30]The state trial court refused to consider the claim because it was repetitive of the claim raised on direct appeal. La. Code Crim. P. Art. 930.4(A) prevents "further" state review and is therefore not a true procedural bar even when the claims were addressed on the merits on direct appeal. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994). Because the claim was addressed on direct appeal, there is no state procedural bar to federal review of this claim.

9

at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

   In this case, Roussell was convicted based on circumstantial evidence. He argues that Louisiana law concerning circumstantial evidence requires that the evidence "exclude every reasonable hypothesis of innocence," and that the State's evidence failed to do that in his case.[31] However, on federal habeas corpus review under the AEDPA, the Court does not apply this state-law, "reasonable hypothesis" standard, but instead must consider whether the decision of the state court was contrary to or an unreasonable application of <u>federal</u> law, in this case, *Jackson v. Virginia*. *See Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

   Furthermore, the Louisiana Supreme Court has held that this state law doctrine is subject to the *Jackson v. Virginia* standard. "This is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997). The "reasonable hypothesis of innocence" standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); *Williams*, 693 So. 2d at 208.

   Therefore, the appropriate standard of sufficiency of the evidence at Roussell's trial is that set forth in *Jackson*. Claims of insufficient evidence present a mixed question of law and fact. *Maes*

---

[31]Louisiana law provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438.

*v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

### B.   Analysis

Roussell challenges the sufficiency of the evidence on several grounds. He argues that the evidence was insufficient to establish that a theft occurred and therefore was insufficient to prove intent to commit a theft. He further contends that the evidence was insufficient to establish that he was a principal to the crime of simple burglary.

Louisiana defines a "principal" as a person "concerned in the commission of a crime, whether present or absent . . . whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. Rev. Stat. Ann. § 14:24. A person who serves as a lookout is a principal to burglary. *State v. Mack*, 715 So.2d 126 (La. App. 2d Cir. 1998). However, it is not enough that an accomplice had the intent to commit the offense; the State must prove that the defendant had the required mental element to establish the crime charged. *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)).

Simple burglary of an inhabited dwelling is defined by Louisiana law as "the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein." La. Rev. Stat. Ann. § 14:62.2. In order to convict an accused of simple burglary of an inhabited dwelling, the state must prove (1) there was an unauthorized entry, (2) the structure was inhabited at the time of entry, and (3) defendant had the specific intent to commit a felony or theft

inside the structure. *State v. Tran*, 709 So.2d 311, 316 (La. App. 5th Cir. 1998) (citing La. Rev. Stat. Ann. § 14:62.2).   As a general principle of law, all of these elements may be proven by circumstantial evidence, including the uncorroborated testimony of a purported accomplice. *State v. Tate*, 851 So.2d 921, 928 (La. 2003) (citing *State v. May*, 339 So.2d 764, 774 (La.1976); *State v. Howard*, 751 So.2d 783, 801 (La. 1999)).

To prove that a dwelling was inhabited, for purposes of the statute, it need not be shown that a person was in the structure at the time of the burglary, but only that someone was living in the apartment. *Id.*, at 317 (citing *State v. Conn*, 420 So.2d 1123 (La.1982)).   To satisfy the unauthorized entry element, the state must prove that the defendant did not have permission to enter the premises. *Id.*, at 316-17 (citing *State v. Smith*, 677 So.2d 589 (La. App. 2d Cir. 1996)).

Roussell's main focus in this petition is on the element of specific intent, which is a state of mind that may be inferred from the circumstances of the transaction and the actions of the accused. *Id.* (citing *Brooks*, 505 So.2d at 717).   "'[S]pecific criminal intent' exists when the circumstances indicate that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act.   Intent, being subjective in nature, need not be proven as a fact; it may be inferred from the circumstances of the transaction." *State v. Nelson*, 487 So. 2d 695, 698 (La. App. 5th Cir. 1988) (citing La. Rev. Stat. Ann. § 14:10 and *State v. Dardar*, 353 So. 2d 713 (La. 1977)); *accord State v. Causey*, 533 So. 2d 1050, 1053 (La. App. 4th Cir. 1988).

Under Louisiana law, displacement of the victim's possessions may be indicative of specific intent to commit a theft. *State v. Wright*, 840 So.2d 1271, 1276-77 (La. App. 2d Cir. 2003) (citing La. Rev. Stat. Ann. §14:62 and *State v. Vortisch*, 763 So.2d 765 (La. App. 5th Cir. 2000)).   Contrary to Roussell's contention, an actual taking of items is not required to establish the intent to commit

12

a theft. *See State v. Jones*, 744 So.2d 165 (La. App. 4th Cir. 1999); *State v. Loya*, 527 So.2d 514 (La. App. 3rd Cir. 1988). Therefore, the defendant need not succeed in the theft but must have possessed the necessary specific intent to commit the theft when he entered the dwelling. *See Id.*

A review of the record in this case reveals that ample evidence existed for a reasonable juror to find that all of the essential elements of simple burglary were proven beyond a reasonable doubt. Harden testified at trial that the apartment in question was her residence, although she was not home when the burglary occurred.[32] Her residency was corroborated by the neighbor, Tammy Gordon.[33]

Harden also testified that she did not invite Roussell or the co-defendant Conner into her apartment and to her knowledge, her brother also did not.[34] The co-defendant Conner testified that he was at the apartment to find Harden's brother, Jones, the door opened when he knocked on it, and he could see that the apartment had been ransacked.[35] Other testimony and evidence established, however, that the door was kicked-in because it had a footprint on it.[36] Gordon also testified that she heard a loud noise like someone kicked in the door.[37]

One officer, Ragas, testified that Roussell moved away from the apartment door as he approached the scene.[38] Another officer, Ortega, and a second witnesses, Tigler, saw Roussell within

---

[32]St. Rec. Vol. 4 of 7, Trial Transcript, (Harden) p. 30 *et seq.*, 5/25/99.

[33]*Id.*, (Gordon) p. 14.

[34]*Id.*, (Harden) p. 37.

[35]*Id.* (Conner) p. 144.

[36]*Id.*, (Ortega) p. 55, 67, (Kuzma) p. 83.

[37]*Id.*, (Gordon) p. 16.

[38]*Id.*, (Ragas) p. 89, 96.

several feet of the doorway during the time of the burglary.[39]  Ortega also testified that, as Roussell turned to walk away from the apartment, three other males, including Conner, exited Harden's apartment.[40]  The four men split up and left the scene walking in different directions.[41]  After Ortega and Ragas received a confirmation of the apartment number, the officers realized that Roussell had been the lookout and the three other men had just exited the burglarized apartment.[42]

The testimony and evidence established that, while nothing was missing, the apartment had been ransacked, with clothes, a mirror, furnishings, the television, and stereo flipped over, broken or torn.[43]  A gun, which had been on top of a cabinet in the bedroom, had been moved and found in a small box by the front door.[44]

A loaded semi-automatic 9 mm handgun, which was "ready to fire", was retrieved from the area where Roussell was stopped by Officer Ragas.[45]  Ragas testified that Roussell told him that he was in the area because his car broke down and he slept in it the night before.[46]  Other testimony

---

[39]*Id.*, (Ortega) p. 53.

[40]*Id.*, (Ortega) p. 52, 61.

[41]*Id.*, (Ortega) p. 52-54, 62, 64, 67.

[42]*Id.*, (Ortega) p. 67-68, 69, 70 (Ragas) p. 99.

[43]*Id.*, (Harden) p. 32-34, 40, 41, (Ortega) p. 55, 67, (Kuzma), p. 85, (Conner) p. 144.

[44]*Id.*, (Harden) p. 35, 45, (Ortega) p. 60.

[45]*Id.*, (Ortega) p. 58-60, (Kuzma) p. 81-82, (Ragas) p. 91.

[46]*Id.*, (Ragas) p. 92, 99.

established that the car did not belong to Roussell but instead belonged to Bienta Coleman, Conner's girlfriend, and had been driven there that morning by Conner.[47]

The physical evidence and testimony at trial establish that the apartment was an inhabited dwelling and that Roussell was not invited to the apartment. The condition of the apartment and circumstances of the events outlined at trial also indicate an intent to commit a theft.

The physical damage to the door, the doorframe, and the furnishings inside the apartment sufficiently showed an unauthorized entry. The disarray of Harden's personal possessions and the movement of the closet contents, the furniture and the placement of the handgun connote inspection and examination of the property even though nothing was removed from the apartment because the police arrived.

Roussell's only excuse for being in the area gave him no cause to be standing at or near Harden's apartment door. The car he claimed to be his was parked a block away on the other side of the complex. The only rational interpretation of the evidence and testimony presented, including that of the co-defendant, is that Roussell's excuse for being in the area was false. Instead, the reasonable conclusion apparently reached by the jury is that Roussell was standing as a look-out while Conner and the two other perpetrators ransacked Harden's apartment looking for items to take, including Jones's gun, and that the completion of the theft was interrupted by the prompt police response.

To the extent the jury's decision was based on credibility determinations, the result is no less proper. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions). The habeas

_____

[47]*Id.*, (Ortega) p. 58, (Ragas) p. 92, (Coleman) p. 123, 124, (Conner) p. 141.

court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact. *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1995) (citing *U.S. v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)).

Furthermore, contrary to Roussell's assertion, Louisiana law does not require that the theft be completed. Rather, to satisfy the elements of the burglary, the jury need only find that the defendant had the intent to commit a theft. As the evidence showed, the state of the apartment alone was sufficient to establish under Louisiana law that the requisite intent existed.

The record is therefore replete with evidence and testimony supporting the jury's finding that all elements of simple burglary of an inhabited dwelling existed in this case. The State presented ample circumstantial evidence from which a rational trier of fact could infer that Roussell was a principal to the unauthorized entry into Harden's apartment and that he had the requisite intent to commit a theft therein.

For the foregoing reasons, the state courts' denial of relief on this claim is not contrary to and represents a reasonable application of clearly established federal law in *Jackson v. Virginia*. Accordingly, this claim has no merit.

## V.    Ineffective Assistance of Counsel at the Multiple Bill Proceedings

Roussell alleges that his counsel provided ineffective assistance at the multiple bill hearing for the following reasons: (1) counsel failed to file a written objection to the use of the July 7, 1987, and the March 10, 1994, convictions on the basis that they were obtained with only stand-by counsel present; (2) counsel failed to object to the authenticity and admissibility of the State's evidence; (3) counsel failed to object to the hearsay testimony of Officer McKenzie; and (4) counsel failed to object when the Trial Court took judicial notice of documents introduced by the State.

The State responded arguing that, as held by the Trial Court, counsel's decisions regarding which objections to raise fell within the ambit of trial strategy which is left to the discretion of counsel.  The State further argues that this Court lacks jurisdiction to consider on habeas corpus review any constitutional challenges to the prior convictions citing *Lackawanna County District Attorney v. Cross*, 532 U.S. 394 (2001).  The State also contends that counsel made those evidentiary challenges he deemed appropriate after review of the evidence and those he did not urge regarding authenticity and admissibility would have been futile in light of Louisiana's evidentiary rules.  In addition, the State argues that the testimony of Officer McKenzie was not hearsay and therefore counsel was not required to urge a futile hearsay objection.  Finally, the State contends that the Trial Court did not take judicial notice of the contents or substance of the documents but rather the type of document contained in the State's exhibits.  This in no way, argues the State, relieved the prosecution of its burden of proof.

Roussell replied to the State's opposition arguing in part that he is entitled to challenge the prior convictions because he meets an exception to *Lackawanna* as he was constructively denied counsel at the prior guilty pleas.  He alleges that the attorneys assigned in the prior pleas were called from the courtroom audience and served as no counsel to him at all.

Roussell raised these claims in his post-conviction application in the Trial Court.  The Trial Court denied relief on November 22, 2002, finding that the challenges were to counsel's sound tactical decisions which did not rise to the level of ineffective assistance under state law or *Strickland v. Washington*, 466 U.S. 668 (1984).  The Louisiana Fifth Circuit and the Louisiana Supreme Court did not provide further reasons for the denial of relief in connection with the subsequent writ applications to those courts.  Therefore, the last reasoned decision on the issue was

that propounded by the Trial Court in which the claims were denied as meritless under the standards set forth in *Strickland*. *Ylst*, 501 U.S. at 802.

A.     **The *Strickland* Standard**

The standard for evaluating counsel's performance is set forth in *Strickland*, the case cited by the Louisiana Trial Court in its opinion denying Roussell's application for post conviction relief. In *Strickland*, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove both deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. To meet the burden of proving ineffective assistance of counsel, Roussell "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of

reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley*, 18 F.3d at 1226 (quoting Strickland,

19

466 U.S. at 693).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing

of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas

relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012

(5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

      A claim of ineffective assistance of counsel is a mixed question of law and fact.  *Moore v.*

*Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must determine whether the state

court's failure to grant relief to Roussell was contrary to or an unreasonable application of

*Strickland*.

### B.    Analysis

      Roussell has raised four arguments in support of his ineffective assistance of counsel claim

alleging that his counsel failed to enter certain objections to the multiple bill and otherwise failed

to object to other evidentiary aspects of the multiple bill hearing.  The arguments are addressed

separately.

### 1.    Failure to File a Written Objection to the Multiple Bill (Error 1)

      Roussell first alleges that his counsel's performance was deficient for failure to file a written

objection to the use of the 1987 and 1994 convictions in the enhancement proceeding.  Roussell's

claim is apparently based in part on the Louisiana's Habitual Offender Law found at La. Rev. Stat.

Ann. § 15:529.1(D)(1)(B) which provides as follows:

> Except as otherwise provided in this Subsection, the district attorney shall have the
> burden of proof beyond a reasonable doubt on any issue of fact. The presumption of
> regularity of judgment shall be sufficient to meet the original burden of proof. If the
> person claims that any conviction or adjudication of delinquency alleged is invalid,
> he shall file a written response to the information. A copy of the response shall be
> served upon the prosecutor. A person claiming that a conviction or adjudication of
> delinquency alleged in the information was obtained in violation of the Constitutions
> of Louisiana or of the United States shall set forth his claim, and the factual basis

therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

(emphasis added).

The multiple bill filed June 25, 1999, alleged that Roussell had previously entered pleas of guilty to possession of stolen property on July 7, 1987, to possession of stolen property on May 3, 1990, and to distribution of cocaine on March 10, 1994.[48]  In response to the multiple bill proceeding, on June 30, 1999, Roussell's counsel filed two responsive pleadings, a Motion for Discovery, Particulars and Inspection Regarding Multiple Offender Bill of Information and a Response to the Multiple Offender Bill.[49]

In the first motion, counsel requested copies of the prior criminal records, including bills of information or indictments, plea forms, fingerprint cards, the names of those taking the fingerprints, mug shots, and transcripts.  The latter response objected to the multiple bill on the basis that the *Boykin* hearings were defective for failure to notify Roussell of the potential applicability of the multiple offender statute, that the arrest documentation to be used by the State was not admissible as hearsay, and he reserved other non-specific objections which could be adduced at the hearing. The matters were heard by the State Trial Court on July 28, 1999.[50]

---

[48]St. Rec. Vol. 1 of 7, Multiple Bill, 6/25/99.

[49]St. Rec. Vol. 1 of 7, Motion for Discovery, Particulars and Inspection Regarding Multiple Offender Bill of Information, 6/30/99; Response to the Multiple Offender Bill, 6/30/99.

[50]St. Rec. Vol. 1 of 7, Minute Entry, 7/14/99.

At the multiple bill hearing, the State called Officer Virgil McKenzie who was tendered as a latent fingerprint expert.[51] Roussell's counsel declined to stipulate to McKenzie's expert status and instead questioned McKenzie as to his qualifications. After obtaining testimony that McKenzie had never published, taught, or been certified as a fingerprint expert, counsel objected to his tender as an expert. The Court overruled the objection and accepted him as an expert in fingerprint analysis permitting him to testify.

McKenzie testified that the fingerprints taken of Roussell that day were the same as those imprinted on the records in the three prior cases. During the process of eliciting this information, the prosecutor asked McKenzie to identify the bills of information from the prior cases. The Trial Court instead took judicial notice that the documents were certified copies of bills of information with attached Boykin forms, sentence sheet and judicial commitments. Roussell's counsel also cross examined McKenzie regarding the accuracy of his fingerprint analysis.

Counsel then called Roussell to the stand. Roussell identified his signatures on at least two of the Boykin forms from the prior convictions and was not sure of the third. Roussell also testified that he could not recall whether the rights on the forms were read to him on the prior occasions.

Counsel argued to the Trial Court that the prior pleas were unconstitutional. Counsel argued that the documents did not contain information regarding the potential use of the convictions to enhance a future sentence. He also argued that the 1987 documentation did not reflect that Roussell was advised of his right to appeal, his right to post conviction relief and his right to an attorney to assist in those matters. He further argued that there was no minute entry of the 1990 or 1994 convictions reflecting a plea colloquy or transcript to show that Roussell was advised of the rights

_____

[51]St. Rec. Vol. 2 of 7, Multiple Bill Hearing Transcript, 7/28/99.

he waived on the plea form, that he understood the waiver, that he was entitled to counsel on appeal, that he could file for post conviction relief.

The Trial Court made the following findings in determining that Roussell was a multiple offender:

> I have looked at all of the documentation on the three underlying prior convictions and in each of these packets there is a waiver of constitutional rights form in that form the - - in each of those three forms the essential rights are announced.  In each of the three forms Mr. Roussell signed and on each of the three forms **Mr. Roussell is represented by counsel**.  They are accompanied by sentencing forms or Commitments or minute entries.  I find that the State has proven each of the underlying convictions.

St. Rec. Vol. 2 of 7, Multiple Bill Hearing Transcript, p. 20-21, July 28, 1999 (emphasis added).

The Trial Court also determined that, at the time of the prior pleas,  Louisiana law did not require that Roussell be notified of the potential for the conviction to be used in a later enhancement. The Trial Court thereafter vacated Roussell's sentence and sentenced him as a multiple offender to serve life imprisonment.

The state court record therefore shows that Roussell's counsel filed a written reply to the multiple bill in which he challenged other aspects of the allegations in the multiple bill.  Therefore, as a factual matter, Roussell's suggestion that counsel did not file written objections is erroneous.

Roussell nevertheless alleges that his counsel was ineffective under *Strickland* because he should have specifically objected to the use of the 1987 and 1994 convictions in the enhancement proceeding.  Roussell claims that he was constructively denied counsel during those convictions in violation of the standard set forth in *Childress v. Johnson*, 103 F.3d 1221 (5th Cir. 1997), and this Court may now review the constitutionality of those prior convictions.

23

As set forth above, the State challenges Roussell's argument as conclusory and meritless. The State also argues that this federal habeas corpus court is without jurisdiction to consider any direct constitutional challenges to the 1987 and 1994 convictions under the doctrine set forth in *Lackawanna*.

      **a.**      **The *Lackawanna* Standard**

The State further suggests that this Court lacks subject matter jurisdiction over any challenges to Roussell's 1987 and 1994 convictions. The State contends that Roussell is no longer in custody on those convictions, and thus, under *Lackawanna*, 532 U.S. at 401-02, this Court lacks jurisdiction to consider the claims. It recognizes, however, that the Court can consider the ineffective assistance of counsel claim as it relates to the current 1999 simple burglary conviction.

Federal district courts have jurisdiction to entertain petitions for writs of habeas corpus only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. A petitioner satisfies the "in custody" requirement when the challenged conviction has not fully expired at the time of the filing of the petition under § 2254. *See Carafas v. Lavallee*, 391 U.S. 234, 238 (1968). A petitioner is not "in custody" for a particular conviction, however, when he or she "suffers no present restraint" from the challenged conviction. *Maleng v. Cook*, 490 U.S. 488, 492 (1989). "[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id.*

In *Lackawanna*, 532 U.S. at 401-02, the United States Supreme Court found that where a petitioner challenges a sentence as enhanced by an allegedly unconstitutional prior conviction, the "in custody" requirement for federal habeas jurisdiction is satisfied as to the current conviction. *See*

also, *Maleng*, 490 U.S. at 493-94; *Dilworth v. Johnson*, 215 F.3d 497, 500 (5th Cir.2000); *Herbst v. Scott*, 42 F.3d 902, 905 (5th Cir.1995). Thus, as the State concedes, this Court has jurisdiction over Roussell's challenge to the constitutionality of his 1999 sentence as enhanced by the prior convictions.

However, Roussell asks this Court to go beyond the 1999 conviction and review the constitutionality of the prior 1987 and 1994 pleas. The *Lackawanna* Court also set forth certain parameters for challenging prior convictions. In *Lackawanna*, the Supreme Court specifically addressed "the extent to which the [prior expired] conviction itself may be subject to challenge in the attack upon the [current] senten[ce] which it was used to enhance." *Lackawanna*, 532 U.S. at 402 (quoting *Maleng*, 490 U.S. at 494). The Supreme Court extended the holding in *Daniels v. United States*, 532 U.S. 374 (2001), which was decided in the context of a motion to vacate under Title 28 U.S.C. § 2255, "to cover § 2254 petitions directed at enhanced state sentences." *Lackawanna*, 532 U.S. at 402.

In *Daniels*, the Supreme Court held that "[i]f . . . a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse . . .[and] may not collaterally attack his prior conviction . . ." *Daniels*, 532 U.S. at 382. When a prior conviction that has been used to enhance a state sentence is no longer open to direct or collateral attack, the prior conviction "may be regarded as conclusively valid." *Lackawanna*, 532 U.S. at 403. Roussell's 1987 and 1994 convictions are now closed to direct or collateral attack, and as a general rule, this Court may therefore regard them as conclusively valid. *See Id*.

However, the general rule is not without exception. *See Id.*, at 404-05. An expired conviction may be attacked when it was obtained where there was a failure to appoint counsel or a constructive denial of counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)[52] and *United States v. Cronic*, 466 U.S. 648 (1984),[53] which would result in certain prejudice under *Strickland. Lackawanna*, 532 U.S. at 404.

In this case, Roussell argues that he meets this exception and this court on habeas review can exam the constitutionality of the prior pleas of guilty. He alleges that he was constructively denied counsel in the 1987 and 1994 plea proceedings and the convictions were inappropriate for enhancement purposes. Thus, if the record supports the conclusion that Roussell was constructively denied counsel in 1987 and 1994, the Court can address the constitutionality of the prior pleas and the impact that conclusion has the effective assistance of his counsel in 1999. However, the burden is on Roussell to prove that he was constructively denied counsel. *Childress*, 103 F.3d at 1228, 1231-32.

### b.     No Proof of Constructive Denial of Counsel

Despite the presence of counsel in 1987 and 1994 shown in the state court records, Roussell relies upon *Childress v. Johnson*, 103 F.3d 1221 (5th Cir.1997) for his claims that he was "constructively denied counsel" and that such denial makes the enhancement of his 1999 sentence unconstitutional.

The *Childress* case is not Supreme Court precedent for purposes of the *Williams* standard applicable to this § 2254 petition. The AEDPA restrict federal habeas review to the clearly

---

[52]In this opinion, the Court held that an uncounseled plea could not be used to enhance another sentence.

[53]In this opinion, the Court held that a defendant could be constructively denied counsel through the failure of counsel present at the proceeding to advocate.

established law of the United States Supreme Court and not the jurisprudence of the circuit courts applying that precedent. *Bell v. Jarvis*, 236 F.3d 149, 162 (4th Cir. 2000); *Welch v. City of Pratt, Kansas*, 214 F.3d 1219, 1222 (10th Cir. 2000); *Bocian v. Godinez*, 101 F.3d 465, 471 (7th Cir. 1996). Thus, this Court uses the opinions of the Supreme Court and not the Fifth Circuit's *Childress* opinion to determine whether Roussell has met an exception to *Lackawanna*.

This Court must therefore look to the Supreme Court's opinion in *United States v. Cronic*, 466 U.S. 648 (1984), in which the Court held that a defendant might be constructively denied counsel although an attorney had been appointed. The *Cronic* Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding. *Cronic*, 466 U.S. at 654 n. 11. The *Cronic* presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of the defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not." *Cronic*, 466 U.S. at 658-59 (internal citations omitted). It is in the presence of these "circumstances of magnitude" where "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002).

The Supreme Court also has emphasized that for *Cronic* to apply, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). "For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*," the Supreme Court held that a case does not come under *Cronic* merely because counsel failed to "oppose the prosecution . . . at specific points" in the proceeding. *Bell*, 535 U.S. at 697. The distinction between counsel's failure to oppose the

prosecution entirely and counsel's failure to do so at certain points is a "difference . . . not of degree but of kind." *Bell*, 535 U.S. at 697. Thus, "even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances." *Cronic*, 466 U.S. at 657 n.19.

Roussell argues that his counsel was appointed hastily in each case with only a duty to assist him to waive his right to a jury trial to allow for the entry of the plea. However, nothing of record in this case definitively indicates that Roussell's counsel did not represent his interests in 1987 or 1994. This is not a case where the state courts found that counsel did nothing to represent the defendant's interests. The state trial court did not make any such factual findings upon which this Court could find that petitioner was constructively denied the assistance of counsel in the prior proceedings. This habeas court simply has Roussell's unsupported contentions and allegations that his prior guilty pleas were uncounseled and uninformed, and that he was constructively denied counsel in 1987 and 1994.

In fact, the state court records reflect that counsel played a more active role than that depicted by Roussell in 1987 and 1994. For example, the certified documents from the prior pleas reflect that on July 7, 1987, Roussell was represented by "his attorney," Calvin Hotard.[54] The record does not indicate whether Hotard was retained or appointed. Nevertheless, Roussell executed a waiver of rights form[55] which opens with the following statement attributed to the Trial Judge: "Your attorney has indicated to me that he has advised you of your rights (1) to a trial by jury, (2) to confront your accusers, and (3) against self-incrimination and that by entering a plea of guilty, you are waiving or

---

[54]St. Rec. Suppl. Vol. 1 of 1, Minute Entry, 87-225, 7/7/87.

[55]St. Rec. Suppl. Vol. 1 of 1, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of Guilty Plea, 87-225, 7/7/87.

giving up these rights. He has also indicated to me that you have advised him that you understand these things. Is that correct?" Roussell answered affirmatively by his initials.

Following other questions from the trial court, the form sets out the sentence to be imposed which is initialed by Hotard as the attorney and by Roussell. The form also contains a declaration signed by Hotard as attorney for Roussell which indicates that he was present during the colloquy between Roussell and the court and that he informed Roussell of his rights, particularly the nature of the crime, the maximum sentence, and the fact that by entering the plea, he waived his right to a jury trial, to confront his accusers, his right against self-incrimination, and that his only appeal was to jurisdictional defects. Following that statement is an acknowledgment signed by Roussell in which he indicates the knowingness and voluntariness of his plea and which states in part:

> I, as the defendant in this case, acknowledge that the foregoing has been read to me, that my attorney and the trial judge have explained the nature of the crime to which I am pleading guilty, all of my rights to me and what rights I am waiving or giving up, as listed above, and that I have been given every opportunity by the trial judge to ask questions in open court about anything I do not understand and about all of the consequences regarding my plea of guilty. I am completely satisfied with the explanations of my attorney and the judge.

By this statement, Roussell contemporaneously acknowledged that he received counsel from his attorney and that his role was somewhat more than just a disinterested stand-by counsel.

The certified record also contains a Hard Labor Plea Sentencing Form dated March 10, 1994, which indicates that Roussell was represented by Guy Lillian, Attorney, when he entered a plea of guilty to two counts of distribution of cocaine.[56] Again, the record does not reflect whether Lillian was retained or appointed. Nevertheless, Roussell also executed a waiver of rights form, which is

---

[56] St. Rec. Suppl. Vol. 1 of 1, Hard Labor Plea Sentencing Form, 93-6078, 3/10/94.

also signed by Lillian as his attorney, in which Roussell acknowledges his satisfaction with the way his attorney and the court handled his case.[57]

Roussell's acknowledgments in the pleadings from 1987 and 1994 show that counsel played a more active role in advising him of the consequences of his pleas.  This level of assistance also formed the basis of the Trial Court's 1999 factual finding that Roussell was adequately represented by counsel in the prior pleas.  This finding came after Roussell's counsel objected to the sufficiency of the evidence presented at the 1999 multiple offender hearing.  This factual finding is entitled to deference according to the *Williams* standard under which this Court must decide Roussell's entitlement to habeas relief.  Roussell therefore has failed to meet his burden to establish a constructive denial of counsel at the prior pleas.

Consequently, Roussell has not shown himself to fall within any exception to the general rule that this Court may regard the 1987 or 1994 convictions as conclusively valid.  As discussed above, when prior convictions are collaterally attacked, the judgments reflecting those convictions are presumed to be regular, and the accused bears the burden of defeating that presumption. *Lackawanna*; *see also Sones v. Hargett*, 61 F.3d 410, 421 n. 19 (5th Cir.1995) (citing *Parke v. Raley*, 506 U.S. 20, 29 (1992)).  Therefore, the disposition of the state court post conviction applications on the constitutionality of the prior convictions is consistent with existing precedent of the United States Supreme Court.  *Parke*, 506 U.S. at 29.[58]

---

[57]St. Rec. Suppl. Vol. 1 of 1, Waiver of Constitutional Rights Plea of Guilty, 93-6078, 3/10/94.

[58]Even if a reviewing court were to consider the applicability of the *Childress* opinion, Roussell's conclusory allegations have not met his burden and his case is distinguishable from that of *Childress* for the reasons considered herein. *See Childress*, 103 F.3d at 1228, 1231-32; *Johnson v. Cockrell*, 301 F.3d 234, 238 (5th Cir. 2002). *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir.1998); *see also, Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.1990) (conclusory allegations of constructive denial of counsel are insufficient to obtain habeas relief).

For the foregoing reasons, Roussell has not established an exception that would allow this Court to review the constitutionality of the 1987 and 1994 convictions.  His suggestion that he was constructively denied counsel in those prior proceedings is without merit under the holding in *Cronic* and he has failed to meet the finality and jurisdictional exception to *Lackawanna*.

### c.      Conclusion

The record therefore establishes that Roussell was not constructively denied counsel in connection with the 1987 and 1994 pleas which were conclusively final at the time of the 1999 multiple bill hearing.  For this reason, there would be no basis for his 1999 counsel to have entered an objection to the use of those prior pleas based on that theory.

His 1999 counsel was not required to lodge an objection that had no legal basis.  *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).  The Court therefore finds that Roussell has not demonstrated a deficient performance by his counsel for failure to object to the validity of the 1987 and 1994 convictions for enhancement of his 1999 sentence.

Accordingly, Roussell also has not demonstrated that the state court's denial of relief on this claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent in *Strickland*.  The petitioner is not entitled to relief on this claim.

### 2.      Failure to Object to Authenticity and Admissibility of State's Evidence, to Hearsay Testimony of Officer Virgil McKenzie and to Trial Court's Taking of Judicial Notice (Errors 2, 3, and 4)

In his remaining ineffective assistance claims, Roussell alleges that counsel should have objected to the evidence and records introduced at the multiple offender hearing because they were not authentic or admissible.  He also argues that counsel should have objected to the testimony of

the fingerprint expert, Officer McKenzie, as hearsay. He further argues that counsel should also have objected when the Trial Court took judicial notice of the documents used as State's evidence.

Federal law is clear that because sentence enhancement proceedings are not determinative of guilt or innocence, an accused does not possess the full range of due process and other constitutional rights normally attendant to such an adjudication. *See Buckley v. Butler*, 825 F.2d 895, 902-03 (5th Cir. 1987). Under Louisiana law, prima facie proof of a defendant's prior felony convictions may be established through the introduction of specific certified documents under La. Rev. Stat. Ann. § 15:529.1(F), and the necessary facts permitting enhancement of sentence may also be proven by other competent evidence. *State v. Curtis*, 338 So.2d 662, 664 (La. 1976); *State v. Williams*, 788 So.2d 515 (La. App. 4th Cir. 2001). "[The Habitual Offender Act] does not require the State to use a specific type of evidence to carry its burden at an habitual offender hearing and that prior convictions may be proven by any competent evidence." *State v. Lindsey*, 770 So.2d 339, 344 n. 3 (La. 2000). "Proof of identity can be established through a number of ways, such as the testimony of witnesses to prior crimes, expert testimony matching the fingerprints of the accused with those in the record of the prior proceeding, or photographs contained in a duly authenticated record." *Williams*, 788 So. 2d at 530; *Curtis*, 338 So.2d at 664. "It is sufficient to match fingerprints on an arrest register to a defendant, and then match the arrest register to a bill of information and other documents evidencing conviction and sentence; this can be done through a date of birth, social security number, bureau of identification number, case number, specifics and details of the offense charged, etc." *Williams*, 788 So.2d at 530.

The state court record reflects that, at the multiple bill hearing on July 28, 1999, for the subject conviction, the State introduced Roussell's fingerprint cards and certified copies of the bills

of information and arrest registers for the prior criminal convictions listed in the multiple bill.[59] The plea forms and other documentation presented by the State reflect that Roussell was represented by counsel and was advised of the rights he was waiving in each of his prior pleas by the court and by his counsel at each plea hearing. In an apparent effort to move the proceedings along, the Trial Court took judicial notice of the types of documents presented by the State. In so doing, the Trial Court took notice of the fact that the particular documents were what they were captioned to be, e.g. a bill of information. The Trial Court made no comment or acceptance of the substance or contents of those forms and instead left it to the State to establish the contents of the documents.

The State's fingerprint expert, Officer McKenzie, was able to match the fingerprints in all three of the cases with the fingerprints taken from Roussell in court on the date of the multiple bill hearing. Roussell's counsel first objected to Officer McKenzie being qualified as an expert in light of his background. Although counsel did not object to the fingerprint evidence per se, he cross-examined the fingerprint expert in an effort to challenge his conclusions and the alleged matches.

Roussell then took the stand in his own defense. He testified that he recognized his signature on the prior plea forms, commenting that the signature on one was messy. He did not deny but instead simply could not recall whether he was advised of his rights at the prior pleas. After considering all of the testimony, exhibits, and defense counsel's constitutional challenges to the evidence, the Trial Court found Roussell to be a multiple offender. The Court further held that the evidence established that Roussell executed the prior plea forms and that he was represented by counsel at each of the prior convictions.

---

[59]*See* St. Rec. Suppl. Vol. 1 of 1.

Roussell now alleges that counsel's performance was deficient for his failure to object to the authenticity and admissibility of the documents related to the predicate convictions. As noted by the State, duly certified records of a defendant's prior convictions are admissible as a statutory exception to the hearsay rule. La. Rev. Stat. Ann. § 15:529.1(F); *State v. Jackson*, 439 So.2d 622, 625 (La. App. 4th Cir. 1983), *writ granted on other grounds*, 452 So.2d 682 (La. 1984). That the records presented at the hearing on July 28, 1999, were certified is evidenced from the re-certified copies presented to the court by the State.[60] Because the certified records of Roussell's prior convictions were authentic and admissible under Louisiana law, it follows that counsel was not deficient for not objecting to their use at the multiple bill hearing or to the Trial Court's judicial notice of the identity of the certified documents.

Roussell also argues that counsel erred by not raising a hearsay objection to certified records relied upon by Officer McKenzie during his testimony at the multiple bill hearing. For the same reasons indicated above, his counsel's performance was not deficient considering La. Rev. Stat. Ann. § 15:529.1(F).

Furthermore, the comparison of fingerprints from prior arrests to a later offense is valid for the purpose of sentencing under Louisiana law and therefore admissible. *See State v. Richmond*, 734 So.2d 33, 37 (La. App. 5th Cir. 1999) (comparing defendant's current fingerprints with fingerprints found in prior arrest records sufficient to prove defendant was the person convicted of a prior felony); *State v. Bell*, 709 So.2d 921, 926 (La. App. 5th Cir. 1998) (same). Moreover, using fingerprint evidence to establish prior convictions in a multiple offender proceeding does not violate constitutional protections. *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983). As such,

---

[60]St. Rec. Suppl. Vol. 1 of 1.

Louisiana courts have consistently held that identification by means of fingerprints on the arrest register or a bill of information itself is adequate to establish the identification of a defendant as a prior felon in a multiple bill adjudication. *State v. Payton*, 810 So.2d 1127, 1132 (La. 2002); *State v. Payne*, 814 So.2d 617, 619 (La. App. 4th Cir. 2002); *State v. Bazile*, 762 So.2d 106, 109 (La. App. 4th Cir. 2000).

Thus, the testimony offered at the multiple bill hearing was a sufficient and often used method to establish petitioner's predicate offenses. *See Baker v. Cain*, 2005 WL 578783, *3-4 (E.D. La. 2005) (quoting *State v. Baker*, 776 So.2d 1212, 1217 (La. App. 5th Cir. 2000)) (finding testimony comparing fingerprints from prior arrest records sufficient to prove that the defendant was the person convicted of prior offense); *State v. Nicholas*, 359 So.2d 965, 968 (La. 1978) (finding state police fingerprint records admissible under "public documents" exception to the rule against hearsay); *see also State v. Henry*, 709 So.2d 322, 326 (La. App. 4th Cir. 1998). In addition, a properly executed waiver of rights form presented at a multiple bill hearing is sufficient to prove that a plea of guilty was knowing and voluntary. *State v. Noel*, 734 So.2d 168 (La. App. 5th Cir. 1999).

Thus, in light of Louisiana law, any blanket objection to the use of the fingerprints to establish Roussell's identity and to the prior records to establish the convictions would have been legally baseless. Counsel is not deficient for failing to urge a meritless objection. *See Green*, 160 F.3d at 1037.

Finally, in order to demonstrate actual prejudice in this case, petitioner would have to show that he would not have been adjudicated a multiple offender had his attorney objected to and been able to exclude the allegedly inadmissable evidence. *See Strickland*, 466 U.S. at 694. Assuming that the documents were not authenticated--which petitioner merely asserts without offering actual

35

evidence--the state could easily have cured this error by having the documents certified or signed by the appropriate party. Any objection to the evidence would have been rendered moot and no prejudice has been suffered by counsel's failure to lodge it.

For the foregoing reasons, Roussell has failed to establish that the denial of relief by the state courts was contrary to or an unreasonable application of Supreme Court precedent. His claims are without merit and must be dismissed with prejudice.

## VI.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Robert F. Roussell's petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _14th_ day of _February_____, 2006.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE